IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMPLETE HEALTHCARE RESOURCES - EASTERN, INC. f/k/a COMPLETE CARE SERVICES - EASTERN, INC., | : : : : | CIVIL ACTION |
| Plaintiff | : : | |
| v. | : : : | NO. 06-2490 |
| PACIFIC LIFE INSURANCE COMPANY LIMITED, | : : : | |
| Defendant | : | |

**MEMORANDUM**

**Baylson, J.**                                                                                                  **May 11, 2007**

**I. Factual and Procedural Background**

Villa St. Michael ("VSM"), not a party to this action, owned and operated a nursing home in Baltimore Maryland. Complete Healthcare ("CH" or "Plaintiff") provided management services to the nursing home pursuant to a "Management Services Agreement" ("MSA") between Villa St. Michael and Complete Healthcare. On November 16, 2002, Berth Small, a resident of the Baltimore nursing home, died as a result of overfeeding. Her children sued Villa St. Michael for medical malpractice and wrongful death (the "Baxter action"). CH was not a party to the suit. Villa St. Michael's general and professional malpractice liability insurer, Pacific Life Insurance Company ("Pacific" or "Defendant"), settled the claim for $800,000.

On June 12, 2006, Complete Healthcare filed a Complaint for Declaratory Judgment, asking this Court to declare that: (1) CH is not obligated to submit to mediation and/or arbitration

of Pacific's subrogation claim; and (2) CH is not liable to Pacific in subrogation or otherwise for the death of Bertha Small. Pacific filed a Motion to Dismiss or to Transfer Venue on July 24, 2006. In the motion, Pacific claimed it was VSM's successor under the MSA, and should be able to enforce the arbitration provision against CH. Alternatively, Pacific asked the Court to transfer the action to the District of Maryland. The Court denied Defendant's motion in an Order dated December 12, 2006.

Pacific then answered Plaintiff's complaint, and asserted counterclaims against Complete Healthcare for contribution and indemnification. Plaintiff filed a Motion to Dismiss Pacific's counterclaims on January 19, 2007. The Court requested supplemental briefing, which the parties submitted on April 13, 2007. For the reasons set forth below, we will grant Plaintiff's motion to dismiss Defendant's counterclaims.[1]

## II. Legal Standard

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d

---

[1] By granting this Motion, we are also, in essence, granting the declaratory relief requested by Plaintiff, by holding that Complete Healthcare is not liable to Pacific in subrogation. The Court's December 12, 2006 Order, denying Pacific's Motion to Dismiss, effectively granted the other aspect of Plaintiff's complaint, by holding that Complete Healthcare was not obligated to submit to mediation and/or arbitration under the terms of the MSA.

Cir. 1988).

**III. Discussion**

      In its Answer to the Complaint, Pacific asserts three counterclaims against Complete Healthcare: (1) a claim for contribution pursuant to the Maryland Uniform Contribution Among Joint Tort-Feasors Act ("UCATA"), based on CH's alleged negligence in managing the nursing home; (2) a claim for contribution based on CH's alleged gross negligence in managing the home; and (3) a claim for indemnification for the full amount of the settlement. Pacific contends that as VSM's insurer it is "subrogated to the rights of its insured to collect some or all of its payment of $800,000 from Complete Healthcare, whose conduct caused or contributed to the suffering and premature death of Bertha Small." (Pacific's Counterclaims, Statement of Facts, ¶ 10). We conclude that Pacific has no right of subrogation against Complete Healthcare under either Maryland or Pennsylvania law,[2] and therefore is not entitled to seek contribution or indemnity from it.[3]

---

[2] As we concluded in our December 12, 2006 Order, there is no relevant conflict between the laws of Maryland and Pennsylvania, and we will therefore refer to them interchangeably. See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007) ("If two jurisdictions' laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary.").

[3] We interpret Defendant's counterclaims as claims for subrogation, rather than direct claims for contribution or indemnity. In both Pennsylvania and Maryland, contribution is statutorily authorized only among joint tortfeasors. See 42 Pa.C.S.A. § 8321 et seq.; Md. Code Ann., Cts. & Jud. Proc. § 3-1401 et seq. Pacific and Complete Healthcare are not joint tortfeasors, and therefore Pacific does not have a direct right of contribution against CH. See Banks Tower Communications v. Home Ins. Co., 590 F.Supp. 1038, 1040 (E.D. Pa. 1984) (Bechtle, J.) (recognizing that contribution is authorized only among joint tortfeasors, and a third party defendant is not a joint tortfeasor with an insurer); David Jeffrey, Ltd. v. Jewelers Mut. Ins. Co., Civ.A.No. 86-6222, 1987 WL 16664, at *1 (E.D. Pa. Sept. 1, 1987) (Newcomer, J.) (finding that a third party defendant and insurer did not act together in causing plaintiff's loss, nor did their independent acts unite to cause plaintiff's loss; accordingly, "they cannot be considered joint tortfeasors" and the insurer did not have a right to contribution from the third party

The doctrine of subrogation permits an insurer that "pays on a claim of its insured [to] assume[] any rights which the insured would have against any other person responsible for the loss." Banks Towers Communications Ltd. v. Home Ins. Co., 590 F.Supp. 1038, 1040 (E.D. Pa. 1984) (Bechtle, J.). An insurer's right to subrogation is "exclusively derivative" - the insurer may only assert claims which the insured has against third parties, and is subject to any defenses the third parties may have against the insured. Id. Essentially, subrogation "operates . . . to secure contribution and indemnity" from an alleged third party tortfeasor for an insured loss. Demmery v. Nat'l Union Fire Ins. Co., 232 A.2d 21, 24 (Pa. Super. 1967); see also Banks, 590 F.Supp. at 1041 ("By the subrogation of the insurer is meant the substitution of the insurer in place of the insured <u>for the purpose of claiming indemnity</u> from a third person for the loss covered by insurance.") (emphasis in original). Subrogation may arise by operation of law ("legal" or "equitable" subrogation) or pursuant to an express or implied agreement ("conventional" subrogation). Poteet v. Sauter, 766 A.2d 150, 159 (Md. Ct. Spec. App. 2001).

In this case, the general and professional liability insurance policies issued by Pacific to

---

defendant).

Indemnification is only appropriate if there is an express contract that provides for it, or "one party's role is so passive or secondary that it would be inequitable to require that party to sustain any of the burden of judgment." Sherwin-Williams Co. v. Artra Group, Inc., 125 F.Supp.2d 739, 754 (D.Md. 2001). In this case, there is no contract of indemnity between Complete Healthcare and Pacific, and the principles of active/passive liability "do not apply between an insurer and an unrelated third-party tortfeasor, because the insurer's rights have been fixed by the contract of insurance, which provides for subrogation." David Jeffrey, 1987 WL 16664, at *2.

Accordingly, we conclude that Pacific is not asserting a <u>direct</u> claim for contribution or indemnity against Complete Healthcare, but rather is seeking contribution and/or indemnity <u>as subrogee</u> of VSM.

VSM, contained express subrogation clauses:

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

(Pacific-VSM Policy, § 4, ¶ 8). Ordinarily, pursuant to this contractual provision and the equitable principles of subrogation, Pacific, as subrogee of VSM, would be entitled to seek contribution or indemnity from an alleged third party tortfeasor. However, this case is complicated by the fact that the insured, VSM, contracted with CH, the alleged third party tortfeasor, to procure the insurance policy at issue, and to name CH as an "additional insured" under the terms of the policy.

As previously noted, in April 2001, VSM and CH entered into a Management Services Agreement ("MSA"). The MSA required CH to maintain a policy of administrator's errors and omissions insurance, in a minimum amount of $1,000,000. (MSA ¶ 4(a)). VSM, as owner of the nursing home, was also required to procure a policy of general and professional malpractice liability insurance, in a minimum amount of $1,000,000, which would insure VSM for "bodily injury (including death) and property damage" at the home. (MSA ¶ 4(b)). Additionally, VSM was to name CH "as an additional insured on [its] general liability and professional malpractice liability insurance." (Id.). Pursuant to the terms of the MSA, VSM obtained a general and professional liability policy from Pacific, and named CH, as well as several other entities, as an additional insured. CH, in turn, maintained a "management consultant" professional liability policy with Philadelphia Indemnity Insurance Company.[4]

---

[4] In response to this Court's request, Plaintiff provided the Court with three professional liability insurance policies maintained by Complete Healthcare between January 2000 and June

It is well-settled that an insurer cannot recover by means of subrogation against its own insured. See Rausch v. Allstate Ins. Co., 882 A.2d 801, 807 (Md. Ct. App. 2005); Remy v. Michael D's Carpet Outlets, 571 A.2d 446, 447 (Pa. Super. 1990). "By definition, subrogation can arise only with respect to the rights of an insured against third persons to whom the insurer owes no duty." Remy, 571 A.2d at 447 (emphasis added). Accordingly, "[w]here there are two insureds under a contract and the insurer pays one insured the amount claimed as damages, no right of subrogation arises against a person who holds the status of an additional insured." Mission Nat'l Ins. Co. v. Hartford Fire Ins., 702 F.Supp. 543, 546 n.6 (E.D. Pa. 1989) (Ditter, J.).

In this case, it is undisputed that CH was an additional insured under VSM's policy with Pacific. However, Pacific contends that it agreed to insure CH only against medical malpractice claims, and not against its own negligence in managing the nursing home. Because managerial negligence, and not medical malpractice, forms the basis of its counterclaims, Pacific believes that CH's status as an additional insured should not preclude it from enforcing its assumed right to subrogation against CH. (Defendant's Response Br. 10). We disagree. The very terms of the insurance policy belie Pacific's argument. The endorsement listing CH as an additional insured specifically provides that Pacific insured CH "only with respect to liability arising out of management services provided for the operation of the facility. . . ." (emphasis added). Thus,

---

2004. It appears that at the time of Bertha Small's death (November 16, 2002), CH was insured by Philadelphia Indemnity Insurance Company. Although the initial policy period was from October 1, 2001 to October 1, 2002, Plaintiff has indicated that CH was covered under an "extended reporting period" in November 2002. In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider a document outside the record, without converting the motion into one for summary judgment, if the document is "undisputedly authentic", and the plaintiff's claims are based on it. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993)).

Pacific agreed to insure against the very risk for which it now seeks reimbursement. Allowing Pacific to proceed by way of subrogation against its own insured, to recover for a loss which it explicitly agreed to insure against, would render the insurance policy meaningless and turn the equitable doctrine of subrogation on its head.[5]

In their papers, the parties extensively discuss a line of cases (referred to as "allocation of risk" cases), holding that:

> where parties to a business transaction mutually agree that insurance will be provided as part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party.

General Cigar Co. v. Lancaster Leaf Tobacco Co., 323 F.Supp. 931, 941 (D. Md. 1971); see also American Fidelity and Casualty Co., 253 F.2d 634 (4th Cir. 1958); Weems v. Nanticoke Homes, Inc., 378 A.2d 190 (Md. Ct. Spec. App. 1977). Our determination that Pacific has no right to subrogation against CH fully comports with these decisions. In the "allocation of risk" cases, one party to a contract agreed to procure insurance to cover a certain risk, and the courts inferred that such insurance was intended to replace the personal liability of both parties to the

---

[5] Cases that have permitted an insurer to bring a subrogation action against its insured are readily distinguishable. In those cases, either the alleged third party tortfeasors were not explicitly named as insureds (and the court declined to find they were "implied co-insureds"), or they were named as insureds in separate and unrelated policies. See,e.g., Remy v. Michael D's Carpet Outlets, 571 A.2d 446 (Pa. Super. 1990) (holding that the tenant was not an implied co-insured of the landlord, and permitting landlord's insurer to bring a subrogation action against tenant); Transport Trailer Service v. Upjohn Co., 506 F.Supp. 442 (E.D. Pa. 1981) (Shapiro, J.) (allowing building owner's insurer to bring a subrogation action against manufacturer of foam that allegedly caused fire loss and property damage, even though the insurer also insured manufacturer under a separate policy; the manufacturer's deductible was not yet exhausted, so precluding a subrogation action would have resulted in an "unbargained for, unpaid for, windfall" for the manufacturer because of the "fortuitous fact" that the building owner was insured by the same insurer).

agreement for the covered risk. In this case, the parties' intent to shift the risk of loss for medical malpractice claims to the insurer is even clearer because <u>both</u> parties to the contract (VSM and CH) are insured under the relevant policy.

The fact that CH was required to (and did) procure a separate administrator's errors and omissions policy does not alter this conclusion. Pacific asserts that the parties to the MSA intended that the risk of "sub-par healthcare" would be covered by CH's own insurance policy, if CH's managerial negligence caused the deficient care. (Defendant's Supplemental Br. 4). However, this argument ignores the fact that Pacific's professional liability policy covered CH for liabilities arising out of CH's management services - precisely the type of risk Pacific contends is at issue in this case. Moreover, Pacific paid $800,000 to settle a <u>medical malpractice</u> claim - a risk that falls squarely within VSM's policy with Pacific, and is expressly excluded from CH's "errors/omissions" policy with Philadelphia Insurance. <u>See</u> Philadelphia Insurance-CH Policy, Medical Malpractice Exclusion ("[I]t is agreed [that insurer] shall not be liable to make any payment for Damages or Claim Expenses in connection with any Claim arising out of, based upon or attributable to medical or professional malpractice including but not limited to the rendering of or failure to render medical or professional service or treatment."). Accordingly, we conclude that Pacific has no right of subrogation against its insured, Complete Healthcare, and its counterclaims for contribution and indemnity fail as a matter of law.[6]

---

[6] Even if Pacific could proceed as VSM's subrogee, we express serious doubts regarding the merits of Pacific's subrogated claims for contribution and indemnity. As VSM's subrogee, Pacific could obtain reimbursement from CH only to the extent <u>VSM</u> was entitled to indemnification or contribution from CH. However, the MSA contractually limits VSM's right to indemnification from CH, providing that VSM would indemnify CH for all losses and liabilities "with the exception of acts of gross negligence or willful misconduct." (MSA ¶ 8(a)). Under Maryland law, gross negligence "has been equated with willful and wanton misconduct, a

**IV. Conclusion**

   For the reasons set forth above, Plaintiff's Motion to Dismiss Defendant's Counterclaims is granted. By granting this motion, and holding that Pacific has no right of subrogation against Complete Healthcare, we are also disposing of Count II of Plaintiff's Complaint for a Declaratory Judgment. The Court's December 12, 2006 Order, holding that Plaintiff was not obligated to submit to mediation or arbitration of Pacific's claims, resolved Count I of the Complaint. Accordingly, the Court has disposed of all counts in the Complaint.

  An appropriate order follows.

A:\Complete Healthcare 06-2490 - MTD Memorandum.wpd

---

wanton or reckless disregard for human life or for the rights of others." McCoy v. Hatmaker, 763 A.2d 1233, 1240 (Md. Ct. Spec. App. 2000) (internal quotations omitted). "[O]nly extraordinary or outrageous conduct can be termed gross negligence - mere recklessness is not enough; there must be reckless disregard for human life." Id. Pacific's allegations that CH negligently hired and supervised the nursing staff, and failed to implement and oversee adequate procedures and protocols, do not rise to this level of liability. Thus, under the terms of the MSA, VSM (and by extension, its subrogee, Pacific) could not obtain indemnification from CH. In fact, to the extent CH is found liable for negligence, VSM is contractually obligated to indemnify CH.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMPLETE HEALTHCARE RESOURCES - EASTERN, INC. f/k/a COMPLETE CARE SERVICES - EASTERN, INC., | : : : : | CIVIL ACTION |
| Plaintiff | : : | NO. 06-2490 |
| v. | : : | |
| PACIFIC LIFE INSURANCE COMPANY LIMITED, | : : : | |
| Defendant | : | |

**ORDER**

AND NOW, this 11th day of May 2007, it is hereby ORDERED that Plaintiff's Motion to Dismiss Defendant's Counterclaims (Doc. No. 19) is GRANTED. Plaintiff shall submit a form of Declaratory Judgment within seven (7) days of the date of this Order, following the entry of which, this case shall be closed.

BY THE COURT:

**/s/ Michael M. Baylson**

Michael M. Baylson, U.S.D.J.